UNITED STATES of America,
Plaintiff,

v.

F. U. BRENNAN, Executrix of the Estate of William J. Brennan,
Defendant.

Civ. A. No. 3610–N.

United States District Court,
M. D. Alabama, N. D.

Jan. 4, 1973.

William D. M. Holmes, Dept. of Justice, Washington, D. C., and Kenneth E. Vines, Asst. U. S. Atty., M. D. Ala., Montgomery, Ala., for United States.

C. V. Stelzenmuller, Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., for defendant.

### ORDER

JOHNSON, Chief Judge.

This action was instituted by the United States of America seeking a judgment against F. U. Brennan, Executrix of the Estate of William J. Brennan, for unpaid Interest Equalization Tax Act taxes, penalty, and interest, amounting to $31,613.50 plus interest as provided by law.

The Interest Equalization Tax Act, 26 U.S.C. § 4911, et seq., provides a vehicle for reducing by appropriate taxation the balance of payments deficit of the United States, while insuring that local investment opportunities remain unimpaired. The Act, as of 1965—the tax year in question—imposed a tax equal to 15 percent of the value of foreign stock acquired by a United States person, and a tax ranging from 2.75 percent to 15 percent of the value of a foreign debt obligation acquired by a United States person. 26 U.S.C. § 4911. Congress expressly excepted from taxation the acquisition of both foreign stock and foreign debt obligations by a United States person from another United States person, so as not to hamper the trade of securities within the United States. 26 U.S.C. § 4918. To ensure against a loophole in favor of a United States person who purchased foreign convertible debentures, paid the generally lower tax rate for foreign debt obligation, and then converted the debentures into foreign stock, Congress expressly provided that if a foreign debt obligation was converted into foreign stock, this would constitute the acquisition of foreign stock from a foreign issuer. 26 U.S.C. § 4912. However, credit would be given for the tax actually paid with respect to the debt obligation when acquired. 26 U.S.C. § 4913.

Mr. Brennan acquired 214 shares of KLM Royal Dutch Airlines convertible debentures (which are debt obligations of a foreign corporation) from a United States person for $274,130.00, and on October 14, 1965, he converted the debentures into KLM Royal Dutch Airlines stock. Treated as an "acquisition of stock from a foreign issuer," this conversion would, according to the government, give rise to an interest equalization tax of $41,119.50 (15% of the purchase price of the stock), minus a credit of $21,108.01, prescribed by section 4913(a)(3), for a net tax liability of $20,011.49. Mr. Brennan failed to file an equalization tax return or pay the amount in question. Therefore, an assessment of $31,613.50 was made against him, which included his $20,011.49 tax liability, a 25 percent penalty amounting to $5,002.88, and accrued interest of $6,599.13. No portion of this liability has been paid.

Defendant first attacks the presumptive correctness of the assessment, claiming certain defects in the assessment. This argument is without merit, inasmuch as the cases cited by defendant are concerned with the formal correctness of pleadings rather than with the requisites of a proper assessment. The regulations cited by defendant were promulgated by the Internal Revenue Service for its own governance, deviations from which do not, in the circumstances of this case, rise to the level of

arbitrary action requiring that the government assume the burden of proving liability and amount.

Defendant's next argument is that she is exempt from liability, due to the interaction of two provisions of the Interest Equalization Tax Act. Section 4913(a)(3)(A) limits the amount of tax imposed on a conversion of debt obligations into stock to the amount of tax which would have been imposed had the debt obligation been treated as stock "at the time of its acquisition by the person exercising the [conversion] right," less the amount specified in section 4913 (a)(3)(A)(ii). Section 4918 excludes the taxation of an acquisition from a United States person. Defendant claims that because the convertible debenture was purchased from a United States person, the amount which would have been owing under section 4913(a)(3) (A), had the debenture been treated as a stock at the time of its acquisition, would be zero. Thus, defendant claims, no tax is owing.

The weakness in defendant's argument is that section 4912(a) explicitly provides that *any* exercise of a right to convert a foreign debt obligation into stock "shall be deemed an acquisition of stock from the foreign issuer by the person exercising such right." While, contrary to the government's position, this statutory language does not dispose of defendant's reading of the literal language of section 4913(a)(3)(A), it is squarely in conflict with section 4918, by virtue of the language of section 4913(a)(3)(A), which appears to exempt from taxation those conversions of debentures which were purchased from a United States person.

Because of the conflict, the government cannot successfully argue that the language of the statute is sufficiently clear and unambiguous as to render resort to the Act's legislative history unnecessary. However, the legislative history clearly indicates that the result sought by the government is what Congress intended. Indeed, Senate Report

No. 1267, reprinted in United States Code Congressional and Administrative News pp. 3478, 3510 (1964), contains an example which precisely parallels defendant's situation and in which the tax is computed in precisely the manner in which the government computed the tax in this case.

The government's position is bolstered not only by the legislative history of the Act but also by consideration of the legitimate national interest which the Act was intended to serve. Were defendant's construction accepted, a monumental loophole would be created, permitting circumvention of the higher tax on foreign stock through the simple expedient of purchasing convertible debentures through a United States intermediary before exercising the conversion privilege. Such a construction would, to a substantial degree, defeat the Act.

■ Thus, this Court concludes that section 4913(a)(3)(A)(i) is to be construed as if it read that the tax imposed upon conversion of a debt obligation shall be limited to the amount of tax which would have been imposed "if the debt obligation had been treated as stock *acquired from a foreign purchaser* at the time of its acquisition by the person exercising the right," less the amount specified in 4913(a)(3)(A)(ii). *Accord,* Armstrong v. United States, 71–1 USTC ¶ 15,975 (C.D.Cal.1971).

■ Defendant's next argument is based on section 4920(b) of the Act, which specifies that a company is not considered a foreign issuer with respect to any class of its stock if more than 50 percent of that class was held of record by United States persons. A "class of stock" is defined as all shares which are identical with respect to the rights and interests such shares represent in the control, profits, and assets of the corporation. Defendant argues that the applicable class is those KLM shares of stock of New York registry and that more than 50 percent of this class of stock was held by United States persons.

**904**

The government, however, argues that there are only mechanical differences between KLM common stock registered in New York and KLM common stock generally. It is undisputed that over 50 percent of KLM common stock as a whole is owned by the government of the Netherlands.

From defendant's own recital of the differences between KLM stock of New York registry and KLM common stock as a whole, it is apparent that the differences are, as the government contends, purely mechanical differences which do not give rise to any differences with respect to the rights and interests such shares represent in the control, profits, and assets of the corporation. Consequently, the applicable class of stock for purposes of section 4920(b) is KLM common stock generally, and as to that class of stock it is undisputed that less than 50 percent is owned by United States persons.

As for defendant's argument that the government incorrectly computed the maturity date of the debentures in dispute, which the government claims are subject to retirement by a mandatory sinking fund, thus making applicable a higher tax rate, the presumption of correctness attends the government's computation. Defendant's argument on this point is wholly conclusory and thus does not constitute evidence destroying the presumption.

Defendant's final argument is that the 25 percent penalty sought by the government should not be imposed on the taxpayer since her decedent's failure to file a return was due to a reasonable doubt as to whether a return was required, given the complexities and ambiguities of the Act. The evidence reflects, however, that the company's call of the debentures, dated September 14, 1965, one month before the decedent's conversion of the debentures, contained a statement that a United States person who converts a debenture will be considered to have acquired common shares from a foreign person. Thus,

this Court concludes that taxpayer's decedent knew or should have known that his conversion of the debentures would subject him to tax liability under the Interest Equalization Tax Act.

Accordingly, it is the order, judgment and decree of this Court that judgment be and the same is hereby entered in favor of the United States, in the amount of $31,613.50, plus interest as provided by law.